# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JEFFREY JULIAN,

                Petitioner,            Case No. 17-cv-12211

                                         Hon. Matthew F. Leitman

v.

ERICA HUSS[1],

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Jeffrey Julian is a state prisoner in the custody of the Michigan Department of Corrections. On July 6, 2017, Julian filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* ECF #1.) In the petition, Julian challenges his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316; and moving or carrying away a dead body, Mich. Comp. Laws § 750.160.

---

[1] The Court amends the caption to reflect that Julian's current custodian is Erica Huss, the warden at the Marquette Branch Prison where Julian is currently incarcerated. *See Edwards Johns,* 450 F.Supp.2d 755, 757 (E.D. Mich. 2006) ("The only proper respondent in a habeas case is the habeas [p]etitioner's custodian, which in the case of an incarcerated habeas [p]etitioner is the warden").

1

Julian raises four claims in his petition: (1) the state trial court denied him due process of law when it permitted the admission of a recorded conversation between himself and witness Dustin Pirl because Pirl was acting as an agent for the police during that conversation, (2) the state trial court denied him due process of law when it refused to allow him to obtain a second independent psychological evaluation, (3) his trial counsel was ineffective when counsel failed to discover and investigate Julian's history of head trauma and marijuana abuse and failed to obtain all of Julian's medical records before scheduling a psychological evaluation, and (4) he was deprived of the presumption of innocence and the effective assistance of trial counsel when his trial counsel, prior to the prosecutor presenting his proofs, conceded Julian's guilt and agreed that there was no dispute as to the facts of the case. (*See id.*)

The Court has reviewed Julian's claims and concludes that he is not entitled to federal habeas relief. Accordingly, the Court will **DENY** his petition. The Court also declines to issue Julian a certificate of appealability. But it will grant him permission to appeal *in forma pauperis*.

# I

Julian appeared before the Bay County Circuit Court for a bench trial on June 12, 2012. (*See* Trial Tr., ECF #5-14.) The trial court convicted Julian as charged.

(*See id.* at Pg. ID 515.)  The Michigan Court of Appeals described the relevant facts as follows:

> On August 27, 2010, defendant contacted the Bay City Police Department to report that his girlfriend was missing. He subsequently told Dustin Pirl that he had killed her. At the request of the police, Pirl agreed to wear a recording device and record a conversation with defendant. During the conversation, defendant again confessed.

*People v. Julian*, 2013 WL 6244705, at *1 (Mich. Ct. App. Dec. 3, 2013).

Julian appealed his conviction the Michigan Court of Appeals, and that court affirmed. *See id.*  Julian then filed an application for leave to appeal in the Michigan Supreme Court, and that court denied leave. *See People v. Julian*, 846 N.W.2d 399 (Mich. 2014).

Julian thereafter filed a post-conviction motion for relief from judgment in the state trial court pursuant to Michigan Court Rule 6.500, *et. seq.* (*See* ECF #5-20.) The trial court denied that motion. *See People v. Julian,* 10-10985-FC (Bay Cty. Cir. Ct., Oct. 2, 2015); *reconsideration den.* Oct. 27, 2015. (*See* ECF ## 21, 23.)  Julian sought leave to appeal the trial court's ruling in the Michigan Court of Appeals and the Michigan Supreme Court, and those courts denied leave. *See People v. Julian,* No. 332575 (Mich. Ct. App. Sept. 27, 2016); *lv. den.* 895 N.W. 2d 195 (2017).

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. To obtain habeas relief, a state prisoner must show that the state court's rejection of his or her claim "was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington, Richter*, 562 U.S. 86, 103 (2011).

## III

## A

Julian first claims that the state trial court violated his Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), when it refused to suppress a tape recorded confession that Julian made to a prosecution witness (Pirl) who Julian says was an agent for the police. The Michigan Court of Appeals reviewed this claim on direct appeal and rejected it:

> Defendant first argues that the trial court erred by denying his motion to suppress the statements to Pirl and the recording. Specifically, defendant maintains that, instead of using Pirl to record the conversation with defendant, the police should have invited defendant to come to the police station for questioning. According to defendant, not doing so "was tantamount to a custodial interrogation" and necessitated *Miranda* warnings. We disagree. [….]
>
> Defendant's position is entirely without merit. First, defendant offers no authority for his position that criminal suspects have a constitutional right to be asked to come to the police station for questioning, and we have located no such authority. This is not surprising since there is no such right. Second, defendant's *Miranda* rights were not violated, let alone implicated, because his recorded conversation with Pirl was not the equivalent of a custodial interrogation.

It is well settled that *Miranda* warnings need only be given when a person is subject to custodial interrogation. Whether a defendant is in custody for purposes of *Miranda* at the time of an interrogation is determined by looking at the totality of the circumstances, with the key question being whether the accused reasonably could have believed that he or she was free to leave.

Here, it is undisputed that the recorded conversation occurred when defendant voluntarily went to Pirl's home and freely confessed to the killing. There simply is no evidence that defendant was ever taken into custody or otherwise deprived of his freedom at any time during this visit. The fact that Pirl may have been acting as an agent of the police has no bearing on whether defendant was deprived of any freedom. Therefore, the trial court did not err by denying defendant's motion to suppress the recording.

*People v. Julian*, 2013 WL 6244705, at *1 (internal punctuation and citations omitted). The Michigan Court of Appeals' ruling was not unreasonable.[2]

---

[2] Julian argues that this claim should be reviewed under a "modified AEDPA standard" because the admission of his taped confession violated his right to due process. See *Bey v. Bagley,* 500 F. 3d 514, 520 (6th Cir. 2007) (describing modified standard). This modified approach requires a "careful review of the record and applicable law" but still bars habeas relief unless the state's court's decision was contrary to or an unreasonable application of clearly established federal law. *Id.* While it is not clear whether this modified approach is still viable, *see Jackson v. Smith*, 745 F.3d 206, 209-10 (6th Cir. 2014), even if the Court applied that standard here, it would still deny Julian habeas relief on this claim because the Michigan Court of Appeals' decision was not contrary to clearly established federal law.

In *Illinois v. Perkins*, 496 U.S. 292, 300 (1990), the United States Supreme Court held that an undercover law enforcement officer posing as a fellow inmate was not required to give *Miranda* warnings to an incarcerated suspect before asking questions that may elicit an incriminating response. The Supreme Court reasoned that "[c]onversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*. The essential ingredients of a police-dominated atmosphere and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate." *Id.,* at 296 (internal quotation marks omitted). Moreover, "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda's* concerns." *Id.* at 297.

In this case, Julian was neither in custody or a "police-dominated atmosphere" when he made the tape recorded confession to Pirl nor was there any evidence that his statement was coerced. *Id.* at 296. The fact that Pirl was wearing a wire and acting as an undercover agent for the police, or that Julian may have been "lull[ed] into a false sense of security," does not implicate *Miranda*. *Id.* at 297. The Michigan Court of Appeals therefore did not unreasonably reject Julian's claim. Nor was that court's decision contrary to clearly established federal law. Accordingly, Julian is not entitled to federal habeas relief on this claim.

**B**

Julian next argues that the state trial court violated his right to due process and to present a defense when the court did not allow him to obtain a second independent psychiatric evaluation before trial. At the time Julian made that request, he had already obtained an independent evaluation that concluded he was not insane or mentally ill at the time of the alleged crime. That independent clinician, Dr. Jeffrey Wendt, met with Julian twice at the Bay County Jail for a total of 7 ½ hours. Dr. Wendt interviewed Julian and Julian's trial counsel and administered several psychological tests. In addition, Dr. Wendt reviewed a report from the Center for Forensic Psychiatry which concluded that Julian was criminally responsible. Dr. Wendt also reviewed the police reports, reports from the Federal Bureau of Investigation, the autopsy report, the transcript of an interview with co-defendant Craig Julian, search warrants, crime scene photographs, records relating to Julian's service in the United States Marine Corps, a transcript of an interview conducted by defense counsel with Amy Julian, the recordings of Julian's telephone calls while at the Bay County Jail, an interview of Julian by the police, the recording of the police interview with Pirl, Pirl's covert recording of Julian, and two Wal-Mart Security videotapes. After conducting this testing and reviewing all of this information, Dr. Wendt concluded that Julian did not meet the criteria to be considered insane or mentally ill at the time of the crime. (*See* ECF #5-18 at Pg. ID 786-88.)

Before trial, Julian requested a second independent psychiatric evaluation. He argued that he needed a second expert to evaluate his claim that he was suffering from post-traumatic stress disorder and that the disorder rose to the level of a mental illness that he could present as a defense. The state trial judge denied his request. The Michigan Court of Appeals reviewed and rejected this claim on direct appeal:

> Defendant filed a notice of insanity defense as required under MCL 768.20a(1) and subsequently underwent a psychiatric examination pursuant to MCL 768.20a(2). He then obtained an expert witness to conduct the independent evaluation allowed under MCL 768.20a(3). Defendant's subsequent request for a second independent evaluation by an expert who had expertise with respect to some of defendant's alleged specific conditions, including post-traumatic stress disorder, was denied.
>
> [….]
>
> There is no authority for the proposition that a defendant is constitutionally entitled to an expert with specific expertise. Although another psychiatrist or psychologist might have had additional expertise, defendant has not established that the appointed expert was not competent. Accordingly, he has not established a constitutional violation.
>
> Further, defendant's claim that his right to present a defense was impaired is refuted by the record. He was permitted to obtain the evaluation by a clinician of his choice, and he has presented no legal or factual basis for concluding that the clinician who provided the first evaluation was incompetent to render analysis or otherwise unsuitable in any way that would necessitate the procurement of a second evaluation. We note that defendant's position at the trial court made it clear that his

> request for a second expert was based on sheer speculation. Defendant claimed that the United States military possessed some medical records that he was attempting to obtain. Defendant speculated that *if* he received those records, those records *could* reflect post-traumatic stress disorder, and another expert *may* be better suited to evaluate defendant. Thus, with defendant's request for another examination being based on speculation, he cannot establish a factual basis that he was denied his right to present a defense.

*People v. Julian*, 2013 WL 6244705, at \*\*2-3 (emphasis original). The Michigan Court of Appeals' conclusion was not unreasonable.

In *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), the United States Supreme Court held that when an indigent defendant demonstrates to a trial judge that his sanity at the time he allegedly committed the offense will be a significant factor at trial, the state must assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense. But the Supreme Court has never "held that a trial court violated *Ake* by refusing to appoint a second … mental health expert." *Leavitt v. Arave,* 646 F.3d 605, 610 (9th Cir. 2011). And Julian has not cited any case in which a federal court of appeals has read *Ake* to require a district court to allow a defendant to obtain a second mental health evaluation.

In this case, Julian received an examination from two competent psychiatrists. First, a psychiatrist from the Forensic Center for Psychiatry examined Julian and concluded that he was not insane at the time of the murder. Then, Julian obtained

his own, independent psychiatrist who reached the same conclusion. The Michigan Court of Appeals did not unreasonably apply *Ake* when it concluded that the trial court did not violate Julian's constitutional rights by refusing to allow him to obtain a second independent evaluation. Nor was such a decision contrary to *Ake*. Julian is therefore not entitled to federal habeas relief on this claim.

## C

Finally, Julian claims that he was denied the effective assistance of trial counsel in two respects. First. Julian argues that his trial counsel was ineffective for failing to obtain all of his (Julian's) medical records, and failing to investigate Julian's use of marijuana and history of head trauma, before counsel scheduled a psychological evaluation. Second, Julian asserts that his trial counsel was ineffective because counsel conceded Julian's guilt during a "walk-through" trial.

Ineffective assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, a petitioner must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance caused the petitioner prejudice resulting in an unreliable or fundamentally unfair outcome. With respect to the front prong of the *Strickland* analysis, a court must "indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The petitioner bears the burden of overcoming the presumption that a challenged action might be considered sound trial strategy. *See id*. To demonstrate prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The Court will examine each of Julian's ineffective assistance claims in turn.

**1**

In Julian's first ineffective assistance claim, he alleges that his trial counsel was ineffective for scheduling an independent psychological examination without first obtaining all of Julian's medical records for the psychologist to review. Julian further asserts that his trial counsel was ineffective for failing to discover and investigate Julian's history of head trauma and marijuana abuse, which Julian argues could have been used to support his insanity defense. The Michigan Court of Appeals reviewed and rejected these claims on direct appeal:

Defendant alleges two errors on the part of his trial counsel. First, defendant alleges that trial counsel was ineffective for scheduling an independent psychological evaluation without first obtaining all of defendant's relevant medical records. Even assuming arguendo that this decision fell below professional norms, defendant has not established that counsel's error was outcome determinative. Though the evaluating clinician did not possess all of defendant's medical records at the time of the evaluation, the trial court explicitly permitted defendant to provide any such records to the clinician and also permitted the clinician to revise his evaluation if necessary. Given those facts, any error was rendered harmless.

Second, defendant asserts that trial counsel erred by failing to discover and investigate defendant's history of head trauma and marijuana abuse. These histories, however, are evidenced on appeal by nothing more than an affidavit by defendant's appellate counsel stating that defendant told her about such histories. There is nothing on the record to support these assertions. Therefore, defendant has waived the issue. Likewise, there is nothing in the record to support a conclusion that any alleged error was outcome determinative; defendant merely asserts that following up on his alleged conditions would have made his insanity defense successful. Even if the conditions had been properly established, defendant has provided nothing to suggest that a clinician would have found these clinically significant to defendant's insanity defense. Given this lack of evidence, defendant cannot establish a claim for ineffective assistance of counsel.

*People v. Julian*, 2013 WL 6244705, at * 4 (internal citation omitted). The Michigan Court of Appeals' conclusion was not unreasonable.

Julian never provided his medical records or any evidence of head trauma or marijuana abuse to the Michigan courts or to this Court. Julian has also failed to show how these records, if they existed, would have supported an insanity defense. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for federal habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Because Julian did not present any evidence to the state courts of the records that he claims his trial counsel failed to obtain, the Michigan Court of Appeals did not unreasonably conclude that he failed to establish that he was prejudiced by his trial counsel's alleged omissions. Julian is therefore not entitled to federal habeas relief on this claim of ineffective assistance.

## 2

Julian next asserts that trial counsel was ineffective when counsel conceded Julian's guilt at the bench trial by essentially conducting what counsel himself referred to as a "walk-through" trial. In order to understand this claim, some background is required. As explained above, prior to the start of Julian's trial, Julian requested that the trial court allow him to obtain a second psychiatric evaluation. The trial court denied that motion. That denial was effectively the death-knell of Julian's defense. Julian had no defense on the merits of the charges against him – indeed, he had confessed to the murder on multiple occasions. Thus, Julian's only viable defense at trial was insanity. But the two experts who had evaluated Julian

concluded that he was not mentally ill at the time of the murder. Without the ability to obtain a second independent evaluation in order to support his claim of insanity, Julian had no real defense to present at trial.

Under Michigan law, the only way for Julian to preserve his right to appeal the trial court's denial of his motion to obtain a second psychiatric evaluation was to not plead guilty and proceed to trial. *See* Michigan Court Rule 7.203(A)(1)(b) (providing that there is no appeal of right following a "plea of guilty"); Michigan Court Rule 6.301(C)(2) (allowing a defendant to enter a conditional plea of guilty and preserve an issue or issues for appeal, but restricting the appeal to "application for leave to appeal only"). Thus, in order to preserve Julian's appellate rights, and because Julian did not have a defense to the charges other than insanity, Julian's counsel decided it was in Julian's best interest to proceed with a "walk-through" trial during which Julian would not contest most of the facts in dispute.

Before Julian's counsel proceeded with the "walk-through" trial, he twice confirmed on-the-record that Julian understood and agreed with that strategy. First, at a pre-trial hearing, counsel and the trial court confirmed that Julian wanted to waive his right to a jury trial and proceed with the "walk-through" trial:

> THE COURT: Okay. And, Mr. Czuprynski, it's my understanding that you have a motion regarding jury trial?
>
> DEFENSE COUNSEL: Yes, your Honor. In conferring with my defen -- my client, he has arrived at the decision to waive his right to jury trial, and we base that primarily

on the – or solely on the fact that we are, in our opinion, being precluded from mounting an insanity defense by the Court's ruling that an assessment by Dr. Wendt shall be treated as a – an evaluation and that we're entitled to only one evaluation, even though it's at the defendant's cost. So, with that in mind, we needed a specialist in the field of PTSD, and since we cannot get that in advance of this trial, we will waive the right to a jury trial, save the taxpayers that expense, you know, for going through a jury trial for what? If we – if we can't mount our insanity defense as intended, then there's just really no rhyme or reason behind having a trial by jury. He will waive the tr – the – the right to a trial by jury, so that we can go through what's called, commonly called, a "walk- through" trial, and that way preserve my client's right to an appeal on the issue surrounding the psychologist – psychiatrist.

[….]

THE COURT: Okay, thank you. Now, Mr. Julian, I want to make sure you understand some things. [….] Now on these charges, you have the absolute right by the United States Constitution to a trial by jury and the Michigan Constitution provides you the same right. Do you understand that you have a right to have these charges tried and the issue decided by a jury of your peers?

DEFENDANT: Yes, I do.

THE COURT:  Do you want a trial by jury?

DEFENDANT:  No, I don't.

[….]

THE COURT:  And it's my understanding that defense is proceeding to trial without offering an insanity defense?

DEFENDANT:  Yes.

DEFENSE COUNSEL:  Yes, we're – our hands are tied in that regard.  [….]  In accordance with this Court's ruling, we are not presenting an insanity defense. And, also, for the record, which was also discussed in chambers and not mentioned yet today, we are willing to stipulate to the identity of the body and preclude the necessity of bringing in the dentist and various other expert witnesses. Again, our intent is just trying to minimize the expense of the taxpayers here.

THE COURT:  Are you sure this is what you want to do, Mr. Julian?

DEFENDANT:  Yes, I am.

(ECF #5-13 at Pg. ID 431-32, 434-35, 439-40.)

Then, on the first day of trial, the trial court and Julian's counsel again confirmed on-the-record that Julian understood what was going to happen at his "walk-through" trial:

DEFENSE COUNSEL: Mr. Julian you were – you're – of course, present when I just explained to the Court why we're doing what's called a walk-through trial and what we consider the only issue that you have, for your defense, is that you're precluded from pursuing due to a previous ruling….? Is that all clear to you?

DEFENDANT:  It is.

DEFENSE COUNSEL:  And – and have I not explained all of this to you and explained to you what a walk-through trial is and why we're pursuing a walk-through trial in this particular case?

DEFENDANT:  You have.

17

> DEFENSE COUNSEL: Okay. Is there any, confusion or
> – or misunderstanding or any questions that you have in
> reference to what we're doing today?
>
> DEFENDANT: No, there's not.
>
> [….]
>
> THE COURT: Mr. Czuprynski, when you use the term
> walk-through trial, I understand what your [sic] saying to
> be that, in your mind the defense that you'd like to assert
> is insanity, that factually there isn't much dispute as to
> what happened, is that what you're saying?
>
> DEFENSE COUNSEL: That's what I'm saying your
> honor.

(ECF #5-14 at Pg. ID 450-51.)

Julian now claims that his trial counsel's decision to proceed with the "walk-through" trial amounted to ineffective assistance of counsel. Julian did not raise this claim on direct appeal. Instead, he raised it for the first time a post-conviction motion for relief from judgment that he filed in the state trial court. (*See* ECF #5-20.) That court concluded that the claim was procedurally defaulted pursuant to Michigan Court Rule 6.508(D)(3) because Julian (1) failed to establish good cause for failing to raise this claim on his direct appeal and (2) did not show actual prejudice.[3] (*See* ECF #5-21.) The Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal this ruling. (*See* ECF ## 5-24, 5-25.)

---

[3] Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which

18

When a state court clearly and expressly relies on a valid state procedural bar, federal habeas review is also barred unless a petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

In this case, Julian has not attempted to excuse his default. Nor has Julian attempted to show that he is actually innocent of the charges or that a fundamental miscarriage of justice has occurred. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). Accordingly, because Julian has not alleged or demonstrated any cause for his procedural default, and he has not shown that he is actually innocent, he is not entitled to federal habeas relief on this claim. *See Smith*, 477 U.S. at 533.

---

could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

Finally, even if Julian had been able to excuse his procedural default, this ineffective assistance claim would still fail on the merits. As described above, ineffective assistance claims are generally governed by the Supreme Court's decision in *Strickland*, which requires a defendant to show both that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance caused prejudice. Julian cannot satisfy either of these requirements.

First, the performance of Julian's trial counsel did not fall below an objective standard of reasonableness. Indeed, it was entirely reasonable for counsel to conclude that Julian's conviction was all but assured and that it was in Julian's best interest to proceed with a "walk-through" trial so that Julian could then appeal trial court's ruling denying his motion for a second psychiatric evaluation. Moreover, counsel did cross-examine and re-cross examine Pirl, the government's key witness, and objected to the admission of Julian's recorded confession. Under these circumstances, trial counsel's conduct was not unreasonable.

Second, Julian has not shown that he suffered prejudice from his counsel's decision to proceed with the "walk-through" trial. The government's evidence of guilt was overwhelming, and Julian had confessed, multiple times. As the trial court said when it issued its verdict, "[i]n this case, there's not only no reasonable doubt, no honest doubt, there is absolutely no doubt, whatsoever, that the defendant is Guilty of the crime." (ECF #5-14 at Pg. ID 515.) Julian simply has not shown that,

given the evidence of guilt that the government possessed, there was a reasonable probability that the outcome of the trial would have been different. *See Poindexter v. Mitchell*, 454 F.3d 564, 582 (6th Cir. 2006). Julian is therefore not entitled to federal habeas relief on this ineffective assistance claim.

Julian insists that *Strickland* does not apply to this claim, and he is entitled to automatic reversal of his conviction, because his counsel's concession of guilt and performance at the "walk-through" trial amounted to a complete denial of counsel. The Court disagrees.

The facts of this case are analogous to those in *United States v. Nixon*, 543 U.S. 175 (2004). In *Nixon*, the defendant was indicted for first-degree murder (a capital charge), kidnapping, robbery, and arson. *See id.* at 180. The strength of the government's case was overwhelming, and the defendant's counsel concluded that the defendant's guilt was "not subject to any reasonable dispute." *Id.* at 181. After plea negotiations broke down, counsel "turned his attention to the penalty phase, believing that the only way to save [the defendant's] life would be to present extensive mitigation evidence centering on [the defendant's] mental instability." *Id.* Counsel further concluded that "the best strategy would be to concede guilt, thereby preserving his credibility in urging leniency during the penalty phase." *Id.* The jury ultimately convicted the defendant and sentenced him to death. *See id.* at 184.

On appeal, the defendant argued that his counsel rendered ineffective assistance because the defendant never expressly consented to his counsel's concession-of-guilt strategy. *See id.* at 186-87. When the Florida Supreme Court reviewed this claim, it did not apply *Strickland*. *See id.* at 178. Instead, that court presumed that the defendant's counsel was deficient and that the defendant suffered prejudice. *See id.* at 178. The Supreme Court reversed. It concluded that where counsel "explain[ed] his proposed trial strategy to [the defendant]," and where the defendant did not expressly object to that strategy, *Strickland* applied to defendant's ineffective assistance claim. *Id.* at 189-90. Likewise here, Julian's trial counsel and the trial judge explained the confines of the "walk-through" trial to Julian, and Julian did not object to that procedure. Indeed, Julian told the trial court that he understood that strategy. Accordingly, as in *Nixon*, *Strickland* applies to Julian's claim of ineffective assistance.

This case is also distinguishable from those in which the United States Supreme Court has held that a defendant's constitutional rights were violated as a result of decisions made by their counsel. In *Bookhart v. Janis*, 384 U.S. 1 (1966), for example, a defendant's trial counsel informed the trial court that the defendant wanted a "*prima facie*" trial where there would be "no cross-examination of the witnesses" and the defendant "in effect admits his guilt." *Id.* at 5-6. As defense counsel was explaining this procedure to the trial judge, the defendant interrupted

and said "I would like to point out in no way am I pleading guilty to the charge." *Id.* at 6. After the trial judge then asked the defendant if he wanted "a *prima facie* case or a complete trial," defense counsel answered "*[p]rima facie*, Your Honor, is all we are interested in." *Id.* The defendant was then convicted after a truncated trial. *See id.* at 7.

The defendant asserted on appeal that he was denied the right to cross-examine the witnesses who testified against him, and the Supreme Court agreed. *See id.* at 2. The court concluded that where the defendant expressly objected to his trial counsel's strategy, counsel could not waive his client's right to cross-examine witnesses and have a full trial. Here, in contrast, even though the trial court explained and questioned Julian about the "walk-through" trial on two separate occasions, Julian never objected to that strategy, and confirmed he fully understood it.

The facts of this case are also distinguishable from the Supreme Court's recent ruling in *McCoy v. Louisiana,* 138 S. Ct. 1500 (2018). In *McCoy*, a defendant's counsel conceded the defendant's guilt during the guilt phase of a capital trial. The defendant argued on appeal that he was denied the effective assistance of counsel. When the Supreme Court reviewed that claim, it held that the defendant did not need to satisfy the requirements in *Strickland*. *See id.* Importantly, the Supreme Court concluded that *Strickland* did not apply to the defendant's claim because the

defendant "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *Id.* at 1505. The Supreme Court explained that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt" is in the defendant's best interest. Here, as described above, Julian lodged no such "adamant[] objection[ion]" and never "insist[ed]" that his counsel "refrain from admitting guilt."

In sum, when the Court reviews the facts of this case, and applies the Supreme Court's holdings in *Brookhart*, *Nixon*, and *McCoy*, it concludes that Julian's ineffective assistance claim related to his counsel's performance during the "walk-through" trial must be analyzed pursuant to *Strickland*. And, for all of the reasons described above, under *Strickland*, Julian's ineffective assistance claim fails.

As Julian has failed to demonstrate entitlement to federal habeas relief with respect to any of his claims, the Court will deny the petition.

## IV

In order to appeal the Court's decision, Julian must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a

different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Julian has failed to demonstrate entitlement to habeas relief with respect to any of his claims because they are all devoid of merit. Therefore a certificate of appealability will be denied.

Although this Court declines to issue Julian a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). Although jurists of reason would not debate this Court's resolution of Julian's claims, an appeal could be taken in good faith. Therefore, Julian may proceed *in forma pauperis* on appeal.

## V

Accordingly, for the reasons stated above, the Court 1) **DENIES WITH PREJUDICE** Julian's petition for a writ of habeas corpus (ECF #1), 2) **DENIES** Julian a certificate of appealability, and 3) **GRANTS** Julian permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: June 26, 2018


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 26, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764